**TEXACO, INC., Appellant,**

**v.**

**Honorable John F. DOMINGUEZ, Appellee.**

**No. 04–91–00264–CV.**

Court of Appeals of Texas, San Antonio.

July 23, 1991.

---

Marshall Boykin, III, Wood, Boykin & Wolter, Corpus Christi, Robert P. Thibault, Brian S. West, Hartford H. Prewett, Houston, for appellant.

Richard Tinsman, Tinsman & Houser, Inc., San Antonio, for appellee.

Before REEVES, C.J., and PEEPLES and CARR, JJ.

## OPINION

REEVES, Chief Justice.

This is an original proceeding in which relator, Texaco, Inc., seeks protection from two discovery orders entered by the Honorable John F. Dominguez.

### I. BACKGROUND

The real parties in interest (plaintiffs) sued Texaco, Inc. for gas royalties allegedly owed pursuant to oil and gas leases, referred to as the Tijerina lease. Plaintiffs contend that Texaco has failed to pay them royalties based on market value, as required by these leases. Suit was originally filed in 1982 in federal district court. At that time, plaintiffs filed a motion for production of documents pursuant to the federal rules of civil procedure. The case was remanded to the state district court. Plaintiffs filed their request for production in state court in October 1986. Informal discovery proceeded and no motions to compel production or seeking sanctions for failure to comply with discovery were filed.[1] In 1990, plaintiffs changed counsel and somewhat more formal discovery commenced. In response to plaintiffs' "First Set of Interrogatories and 1990 Request for Production," Texaco filed its response and supple-

---

1. Apparently Texaco provided plaintiffs with documents from its Houston, Tulsa, New Or-leans, and Corpus Christi offices prior to the 1990 request for production.

mental response in which it claimed that some of the requests were beyond the scope of discovery, irrelevant to plaintiffs' claims, not calculated to lead to admissible evidence, overbroad, for harassment only, and the requested documents preceded the tolling time agreed to by the parties.

In order to respond to the interrogatories, Texaco searched through more than 200 boxes of its records stored in a warehouse in Midland, Texas, and pulled out documents it believed were related in any way to the Tijerina lease. These documents filled twelve boxes. Later, Texaco went through another fifty-four boxes it discovered at another location and tendered plaintiffs another three boxes of documents related to the Tijerina lease.

On November 7, 1990, plaintiffs filed a motion to compel production and a hearing was held April 19 and 22, 1991. Texaco filed a response to the motion to compel. Two orders (May 23, 1991, and May 28, 1991) arose out of the hearing and are the subject of this proceeding.

## II. THE MAY 23RD ORDER

The trial court order, signed May 23, 1991, permits plaintiffs to search through any box or file from which Texaco produced a document in response to plaintiffs' 1990 request for production. The court provided that for any document plaintiffs found that they wanted to copy, an *in camera* inspection would be held.

Texaco claims that the order is violative of TEX.R.CIV.P. 167 and constitutes an abuse of discretion. It requests this Court to order the trial court to rescind its order. After leave to file the petition for writ of mandamus was granted, this Court entered a stay order to halt plaintiffs' search of Texaco's files.

### A. Mandamus Relief

■ The writ of mandamus will issue to correct an improper order granting discovery of non-discoverable documents. *Commercial Travelers Life Ins. Co. v. Spears,* 484 S.W.2d 577, 579 (Tex.1972); *Crane v. Tunks,* 160 Tex. 182, 328 S.W.2d 434, 439 (1959). Such relief is appropriate when the trial court's order is a clear abuse of discretion and conflicts with a rule of civil procedure. *Wal-Mart Stores, Inc. v. Street,* 754 S.W.2d 153, 155 (Tex.1988).

### B. Inspection of Adversary's Records

■ Rule 167 permits a party to request another party to produce any designated document within its possession, custody, or control. TEX.R.CIV.P. 167(1)(a). In the general or routine discovery case, the discovered party raises claims of exemption or immunity to prevent the discovering party from reviewing or obtaining documents that, although responsive to the production requests, are protected due to their special characterization as attorney-client communications, work product, etc. In that case, the burden rests on the discovered party to raise the specific immunity or exemption and, when appropriate, to request the trial court to review the documents *in camera* to determine whether they are indeed protected from discovery. *See Peeples v. Honorable Fourth Supreme Judicial Dist.,* 701 S.W.2d 635, 637 (Tex.1985).

However, the facts of this case differ significantly from those of the general or routine discovery case. In this situation, the discovered party does not seek protection for documents covered by immunity or exemption. The issue here is, once the discovered party has produced all requested documents it deems to be relevant to the controversy, does the discovering party have a right to ascertain the accuracy and completeness of the discovered party's response by searching through the files not produced by the discovered party? Texaco claims it produced all documents requested and fully complied with discovery; plaintiffs claim there may be more documents to satisfy their request—they just do not know.

### 1. TEX.R.CIV.P. 167

■ The purpose of discovery is to try cases based on what the facts reveal, not what they conceal. *Garcia v. Peeples,* 734 S.W.2d 343, 347 (Tex.1987); *Jampole v. Touchy,* 673 S.W.2d 569, 573 (Tex.1984).

The purpose of the Discovery Rules is to augment and facilitate the trial process, to narrow as much as possible, the actual issues in dispute, and to change the trial of a lawsuit from a game of chance and surprise, or "Blind Man's Bluff", as it once was, to an orderly process of unclouding matters and uncovering the actual facts involved.

*Pearson Corp. v. Wichita Falls Boys Club Alumni Assoc.*, 633 S.W.2d 684, 686 (Tex. App.—Fort Worth 1982, no writ).

Unfortunately, this goal of the discovery process is often frustrated by the adversarial approach to discovery. The "rules of the game" encourage parties to hinder opponents by forcing them to utilize repetitive and expensive methods to find out the facts. [Citation omitted.] The truth about relevant matters is often kept submerged beneath the surface of glossy denials and formal challenges to requests until an opponent unknowingly utters some magic phrase to cause the facts to rise.

*Garcia v. Peeples*, 734 S.W.2d at 347.

The competing interest of the discovered party to protect its privileged documents must also be considered. The trial court's broad grant of power to order discovery which may lead to admissible evidence "is limited, however, by the legitimate interests of the opposing party, for example, to avoid overly-broad requests, harassment, or disclosure of privileged information." *Jampole v. Touchy*, 673 S.W.2d at 573; *see General Motors Corp. v. Lawrence*, 651 S.W.2d 732, 733–34 (Tex.1983).

 The movant for discovery must make a specific request. *Independent Insulating Glass/Southwest, Inc. v. Street*, 722 S.W.2d 798, 802 (Tex.App.—Fort Worth 1987, writ dism'd); *see Weisel Enters., Inc. v. Curry*, 718 S.W.2d 56, 58 (Tex.1986); *Peeples v. Honorable Fourth Supreme Judicial Dist.*, 701 S.W.2d at 634. Generally, requested information is discoverable absent a valid objection. *Jampole v. Touchy*, 673 S.W.2d at 575. Thus, the party seeking to exclude documents from discovery must specifically plead the particular privilege or immunity claimed and provide evidence to support the claim. The trial court then must determine whether an *in camera* inspection is necessary. If it is needed, the party seeking protection must segregate and produce the documents to the court. *Loftin v. Martin*, 776 S.W.2d 145, 147 (Tex.1989); *Weisel Enters., Inc. v. Curry*, 718 S.W.2d at 58; *Peeples v. Honorable Fourth Supreme Judicial Dist.*, 701 S.W.2d at 637; *see* TEX.R.CIV.P. 166b(4).

Rule 167 permits a party to inspect and copy designated documents. TEX. R.CIV.P. 167(1)(a). The rule "is not a fishing rule. It cannot be used simply to explore.... The Motion for Discovery must be specific, must establish materiality, and must recite precisely what is wanted. The Rule does not permit general inspection of the adversary's records." *Loftin v. Martin*, 776 S.W.2d at 148, *quoting*, STEELY & GAYLE, *Operation of the Discovery Rules*, 2 HOUSTON L.REV. 222, 223 (1964); *see also Bryan v. General Elec. Credit Corp.*, 553 S.W.2d 415, 419 (Tex.Civ. App.—Houston [1st Dist.] 1977, no writ) (applying rule 167 when a showing of good cause was still required); *Bounds v. Caudle*, 549 S.W.2d 438, 444 (Tex.Civ.App.— Corpus Christi), *rev'd on other grounds*, 560 S.W.2d 925 (Tex.1977) (applying rule 167 when a showing of good cause was still required); *General Commentary—1966*, Tex.R.Civ.P.Ann. 167 (Vernon 1976). Rule 167 provides that the discovery request must state with particularity the items sought.

We have found no civil cases on the issue to turn to for guidance, though some criminal cases have been reported that we find to be instructive. It has been held that a criminal defendant has no right to search through the prosecution's files for exculpatory evidence. A defendant alone does not make the determination as to materiality of the information. For a *Brady*[2] request, the State makes the decision of what infor-

---

**2.** *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (seeking exculpatory evidence from prosecution).

mation must be disclosed. The prosecutor's decision is final unless the defendant becomes aware of evidence that has been withheld and brings it to the court's attention. *Pennsylvania v. Ritchie*, 480 U.S. 39, 54, 59, 107 S.Ct. 989, 1000, 1002, 94 L.Ed.2d 40 (1987); *Commonwealth v. Carillion*, 380 Pa.Super. 458, 552 A.2d 279, 284 (1988). Since a criminal defendant, with strong due process protections, is not afforded the right sought by plaintiffs, we find it difficult to accept that such a right would be conferred in a civil case.

### 2. FED.R.CIV.P. 34(b)

■ Texas discovery rule 167 is based on FED.R.CIV.P. 34. *Notes & Comments,* Tex.R.Civ.P. 166 (Vernon 1976). The federal courts similarly restrict fishing expeditions under FED.R.CIV.P. 34.

> [T]he purpose of Rule 34 is to provide a method whereby a party may procure the production of certain specific items by order of the court. The purpose of Rule 34 is not to discover what exists but to force the production of items that do exist. An order to produce may not be made until the existence of the documents is established.

*William A. Meier Glass Co. v. Anchor Hocking Glass Corp.,* 11 F.R.D. 487, 491 (W.D.Pa.1951). Fishing expeditions, prohibited under Rule 34 production of documents, can be conducted through the use of depositions and interrogatories. *Id.*

### C. Testimony

Texaco's attorney, John G. Gunter, testified that he inspected the documents contained in the 200 boxes located in the Midland warehouse and pulled out every document which responded to plaintiffs' request. These documents filled twelve boxes. He separated out of these documents items he thought the attorney-client privilege may apply to and forwarded those documents to Mr. Thibault, Texaco's in-house counsel. Mr. Thibault released some of these documents to plaintiffs and tendered the remainder to the trial court for an *in camera* inspection. Plaintiffs' attorney reviewed and copied the non-privileged documents comprising the twelve boxes.

Mr. Gunter further testified that only five to ten percent of the documents contained in the 200 boxes were related to the Tijerina lease. The remaining ninety to ninety-five percent of the documents covered other leases and other fields and divisions of Texaco. Mr. Gunter said that he was instructed to pull out all Tijerina documents and all production related materials, that is, all "Vela"[3] documents. He stated that the Tijerina documents included the Seeligson and TCP fields (those included in the requests for production). However, he said that if a document discussed "Vela" but did not mention Tijerina, he would not have considered the document relevant.

Sharon Cook, an attorney for plaintiffs, testified that she had been notified that a significant number of documents had been located in an off-site storage facility in Midland. She went to the Midland storage facility and was tendered twelve boxes of documents. She explained that previously plaintiffs had been given documents by Texaco from its New Orleans, Tulsa, Houston, and Corpus Christi offices.

### D. Discussion

■ This is a case of plaintiffs' frustration. They are in a situation in which they believe that Texaco might be overlooking or ignoring documents in its records which are responsive to plaintiffs' requests. However, the remedy they obtained, the perusal of certain of Texaco's file boxes, is beyond the scope of discovery. Plaintiffs have not pointed to specific documents they contend have not been produced. Indeed, plaintiffs would not, in all likelihood, be able to do so because Texaco's files are not open to them. It is this lack of knowledge that compels them to seek a searching expedition through their adversary's files. But this is what the rules of discovery

**3.** "Vela" documents relate to how royalties are paid (market value or other formulation) and

are the basis of this lawsuit.

were promulgated to prevent. There can be no fishing expeditions. Plaintiffs are not entitled to search through their adversary's files for documents they deem to be responsive to their requests. Their contention that they could not possibly memorize any non-discoverable document they stumble across is not persuasive. The trial court clearly exceeded the bounds of permissible discovery.

The trial court limited the search of Texaco's files to those file boxes from which a document had already been produced. But this limitation does not affect the characterization of the invasion into a party's files. Texaco's attorney testified that the file boxes from which documents were pulled contain more documents than just those related to the Tijerina lease. Leases and documents concerning unrelated persons and fields are filed in the box.

Since fishing expeditions are disallowed, it would seem to preclude going through a party's records. 1 R. McDONALD, TEXAS CIVIL PRACTICE IN DISTRICT AND COUNTY COURTS § 10.03 (rev. 1984); 15 A. MITCHELL & A. GILBERT, TEXAS METHODS OF PRACTICE § 4049 (Texas Practice 1971); *see also La Chemise Lacoste v. Alligator Co.*, 60 F.R.D. 164, 172 (D.Del.1973), *aff'd*, 487 F.2d 312 (3rd Cir. 1973) (when party avers it has produced all requested documents, compulsion order will not be issued).

Plaintiffs are not without a remedy. True, an *in camera* inspection by the trial court of all the documents stored in the 254 boxes is an unreasonable burden on the trial judge. However, other methods are available. Texaco suggested the appointment of a master to inspect the documents.

Plaintiffs can depose or send written interrogatories to Texaco's representatives concerning the existence of documents which would enable them to point specifically to documents or classes of documents which Texaco has failed to produce. Further, if, as plaintiffs repeatedly suggest, Texaco is not cooperating in discovery and not complying with their requests, rule 215 sanctions may be imposed. But to permit an adversary to search through its opponent's files exceeds the bounds of permissible discovery.

■ Plaintiffs also contend that Texaco's untimely response waives all of its objections to the requested documents. "[O]bjections to rules 167 and 168 discovery requests served after the expiration of thirty days are waived unless an extension of time has been obtained from the trial court or good cause is shown for the failure to object within thirty days." *Independent Insulating Glass/Southwest, Inc. v. Street*, 722 S.W.2d at 802. Texaco's request for protection does not arise out of objections to providing the requested documents. Texaco claims it gave plaintiffs all responsive documents and documents not provided were not requested.

We find that the trial court exceeded the bounds of TEX.R.CIV.P. 167 in ordering relator to grant access to plaintiffs of all boxes from which relator pulled a document in response to plaintiffs' discovery request.

### III. THE MAY 28TH ORDER

Texaco also complains of an order entered by the trial court directing Texaco to provide "a more responsive answer" to six of plaintiffs' requests for production.[4] Ap-

---

**4.** The requests and Texaco's answers are as follows:

**REQUEST FOR PRODUCTION NO. 5:** Please produce copies of all documents pertaining to any severance tax paid on any royalties paid pursuant to the H.C. de Tijerina lease from 1973 to present.

**RESPONSE:** Such of the requested documents in Texaco's possession shall be made available to the Plaintiffs for review at the Texaco office where maintained during regular business hours, on mutually agreeable dates.

**REQUEST FOR PRODUCTION NO. 9:** Please produce all Texas Railroad Commission reports (monthly and annual), as well as corrected reports, covering the operation of the Texaco, Inc. T–C–B or Tijerina Gas Processing Plant and/or any other gas processing plant that H.C. de Tijerina lease natural gas was delivered to by Texaco, Inc. from October 1, 1973 through the present date.

**RESPONSE:** Such of the requested documents in Texaco's possession shall be made available to the Plaintiffs for review at the Texa-

parently, most or all of the documents produced by Texaco were Bates-stamped (a numbering system by which each document is assigned a number). Plaintiffs sought to require Texaco to provide, in reference to each production request, the Bates-stamp number of the document supplied in response to the request. Texaco claims it is not required to do so because it already complied with rule 167(1)(f) by tendering plaintiffs the documents in the way it kept them in the usual course of its business. It claims that the rule authorizes alternative methods for producing documents and the option as to which method to employ belongs to Texaco, as the producing party. The trial court ordered Texaco to provide more responsive answers.

## A. Tex.R.Civ.P. 167(1)(f)

Rule 167 provides:

A party who produces documents for inspection shall produce them as they are kept in the usual course of business, or shall organize and label them to correspond with the categories in the request. TEX.R.CIV.P. 167(1)(f).

The Texas Litigation Guide indicates that there are limits, as indicated by TEX.R.CIV.P. 168(2)(b), on the proper exercise of the option as to how documents will be produced—by category in reference to the request or as the files are kept in the usual course of business. *See* W. DORSANEO, 3A TEXAS LITIGATION GUIDE § 93.-06[2] (1991) (when answer to interrogatories refers party to documents, response must sufficiently detail records so other party can identify them).

## B. Fed.R.Civ.P. 34(b)

A federal court has noted that the purpose of the 1980 amendment to FED. R.CIV.P. 34(b), which contains the same language as the provision in TEX.R.CIV.P. 167(1)(f), "was aimed at forestalling such abuses as the deliberate mixing of 'critical documents with others in the hope of obscuring significance.'" *Board of Education v. Admiral Heating & Ventilation, Inc.*, 104 F.R.D. 23, 36 (N.D.Ill.1984), *citing, Advisory Committee Note*, FED. R.CIV.P. 34 (West 1980). The court noted that the option contained in rule 34(b) as to how to produce the records does not belong exclusively to the producing party. *Id.* at

co office where maintained during regular business hours, on mutually agreeable dates.

**REQUEST FOR PRODUCTION NO. 10:** Please produce all documents to include all in-house documents of Texaco, Inc. which contain all reports from the gas processing plant at issue, the accounting of gas volumes and quality produced from the plant, the liquids [sic] name, volumes and quality covering the H.C. de Tijerina lease natural gas from the date the plant opened through the present date.

**RESPONSE:** Such of the requested documents in Texaco's possession shall be made available to the Plaintiffs for review at the Texaco office where maintained during regular business hours, on mutually agreeable dates.

**REQUEST FOR PRODUCTION NO. 11:** Please produce all documents evidencing all natural gas and natural gas liquids sold from the H.C. de Tijerina lease including volume measurement, unit price and dollar amounts received, quality of the product sold and the location of delivery of those products (both gaseous and liquid, including contracts between the Defendant and any other persons and/or entities) from the date the plant opened through the present date.

**RESPONSE:** Such of the requested documents in Texaco's possession shall be made available to the Plaintiffs for review at the Texa-

co office where maintained during regular business hours, on mutually agreeable dates.

**REQUEST FOR PRODUCTION NO. 15:** Please produce all documents pertaining to all original individual well tests conducted by Texaco, Inc. field personnel as well as the production department records reflecting the current well tests on each H.C. de Tijerina lease well being used each month to reflect the productivity of the well and/or to allocate or account for liquid and natural gas production from October 1, 1973 through the present.

**RESPONSE:** Such of the requested documents in Texaco's possession shall be made available to the Plaintiffs for review at the Texaco office where maintained during regular business hours, on mutually agreeable dates.

**REQUEST FOR PRODUCTION NO. 16:** Please produce all documents reflecting the monthly accounting of the time each well (by zone) on the H.C. de Tijerina was produced and the amount of production allocated each well and/or zone in each well for that month from October 1, 1973 through the present day.

**RESPONSE:** Such of the requested documents in Texaco's possession shall be made available to the Plaintiffs for review at the Texaco office where maintained during regular business hours, on mutually agreeable dates.

36, n. 20. As noted by Wright and Miller, the amendment to FED.R.CIV.P. 34(b) "should not be read as giving the party from whom discovery is sought an absolute option to produce records as kept in the usual course of business. He should be required to produce them in a form that will make reasonable use of them possible." 8 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE (West Supp.1991).

### C. Discussion

■ The order does not specify how Texaco must be more responsive. The order does not require Texaco to respond to the requests by categories, Bates-stamp numbers, or in any other specific manner. We will not speculate on the trial court's intention in the absence of a clearly written order.

■ The trial court has a great deal of latitude concerning how it will conduct discovery, and the court's order on discovery will not be disturbed in the absence of a clear abuse of discretion. *Jampole v. Touchy*, 673 S.W.2d at 573. It must be remembered that the document production involved in this case involves over a hundred thousand documents. We do not find it unreasonable for the trial court, in an effort to clarify discovery and meet the purposes of discovery (to try cases based on what the facts reveal, not what they conceal), to order the party producing the documents, and who is most familiar with them, to identify which documents satisfy which request. Further, Texaco offered no proof to the trial court that the documents, as provided to plaintiffs, were as kept in the usual course of business. The only testimony was that Texaco representatives or employees culled the records, pulled out all responsive documents, and put the documents into other boxes for plaintiffs to review.

The order does not violate rule 167(1)(f)—the rule provides alternatively for this method or as the records are kept in the usual course of business.

The trial court did not abuse its discretion in ordering Texaco to provide more responsive answers.

### IV. CONCLUSION

The writ of mandamus will issue only if Judge Dominguez fails to rescind his May 23, 1991, order which permits plaintiffs to inspect Texaco's files. The writ is denied as to his May 28, 1991, order.