ACCEPTED
15-25-00109-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
7/11/2025 9:38 PM
CHRISTOPHER A. PRINE
CLERK

**No. 15-25-00109-CV**

# In the Court of Appeals
# for the Fifteenth Judicial District
# Austin, Texas

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
7/11/2025 9:38:17 PM
CHRISTOPHER A. PRINE
Clerk

IN RE STORABLE, INC.; REDNOVA LABS, INC. (D/B/A STOREDGE);
SITELINK SOFTWARE, LLC; EASY STORAGE SOLUTIONS, LLC; BADER CO.;
AND PROPERTY FIRST GROUP, LP,
*RELATORS.*

*On Petition for a Writ of Mandamus to the
Third Division of the Texas Business Court*

**REAL PARTY IN INTEREST'S RESPONSE
TO PETITION FOR WRIT OF MANDAMUS**

JUDD E. STONE II
  State Bar No. 24076720
CHRISTOPHER D. HILTON
MICHAL R. ABRAMS
CODY C. COLL
ALEXANDER M. DVORSCAK
STONE HILTON PLLC
600 Congress Ave., Suite 2350
Austin, Texas 78701
judd@stonehilton.com
(737) 465-7248

*Counsel for Real Party in Interest SafeLease Insurance Services LLC*

## IDENTITY OF PARTIES AND COUNSEL

**Appellants:** Defendants Storable, Inc.; RedNova Labs, Inc. (d/b/a storEdge); SiteLink Software, LLC; Easy Storage Solutions, LLC; Bader Co.; and Property First Group, LP.

**Appellate and Trial Counsel for Appellants:**

Dale Wainwright (lead counsel)
  dale.wainwright@gtlaw.com
Justin Bernstein
  justin.bernstein@gtlaw.com
GREENBERG TRAURIG LLP
300 West 6th Street, Suite 2050
Austin, Texas 78701
(512) 320-7200

Ray T. Torgerson
  rtorgerson@porterhedges.com
Jonna N. Summers
  jsummers@porterhedges.com
Elizabeth "Liza" Eoff
  leoff@porterhedges.com
Lakshmi N. Kumar
  lkumar@porterhedges.com
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6000

Katherine G. Treistman
  katherine.treistman@arnoldporter.com
Andrew D. Bergman
  andrew.bergman@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
700 Louisiana Street, Suite 4000
Houston, Texas 77002
(713) 576-2400

**Appellee:** Plaintiff SafeLease Insurance Services, LLC

**Appellate and Trial Counsel for Appellee:**
Judd E. Stone II (lead counsel)
  judd@stonehilton.com
Christopher D. Hilton
  chris@stonehilton.com
Michael R. Abrams
  michael@stonehilton.com
Cody C. Coll
  cody@stonehilton.com
Alexander M. Dvorscak
  alex@stonehilton.com
STONE HILTON PLLC
600 Congress Ave., Suite 2350
Austin, Texas 78701
(737) 465-3897

R. Paul Yetter
  pyetter@yettercoleman.com
Susanna R. Allen
  sallen@yettercoleman.com
Luke A. Schamel
  lschamel@yettercoleman.com
Shannon N. Smith
  ssmith@yettercoleman.com
Julia Risley
  jrisley@yettercoleman.com
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000

Adam T. Locke
  adam@lockelaw.com
LOCKELAW PLLC
2617 Bissonnet Street, Suite 503
Houston, Texas 77005
(713) 832-0243

## TABLE OF CONTENTS

Identity of Parties and Counsel ............................................................. i

Table of Contents .......................................................................... iii

Index of Authorities........................................................................iv

Introduction ............................................................................... 1

Standard of Review ........................................................................ 3

Argument.................................................................................. 4

I.    Storable Chose Not to Allege the Data Is a Trade Secret Until Too Late and Failed to Preserve Any Privilege..................................... 4

II.   Storable's Data is Secured by The Agreed Protective Order. ......... 9

   A.   No one claims a protective order prevents deciding what is a trade secret or what should be produced. ............................... 11

   B.   Whether the protective order might become void later is a nonissue. ......................................................................... 11

   C.   Storable's suggestions about improper disclosures are both new and baseless. .......................................................... 13

III.  Storable Never Established that this Data is a Trade Secret....... 17

IV.  Customer Data has Core Relevance to this Case and is Needed. .. 24

V.   Storable has an Adequate Remedy by Appeal............................ 29

Prayer ................................................................................... 30

Certificate of Service ................................................................... 31

Certificate of Compliance .............................................................. 31

**Cases**

*Allan J. Richardson & Assocs., Inc. v. Andrews,*
718 S.W.2d 833 (Tex. App.—Houston [14th Dist.] 1986, no
writ) .......................................................................................................20, 22

*Bell Helicopter Textron, Inc. v. Walker,*
787 S.W.2d 955 (Tex. 1990)...................................................................3

*DeSantis v. Wackenhut Corp.,*
793 S.W.2d 670 (Tex. 1990)..................................................................20

*ETC Field Servs., LLC v. Tema Oil & Gas Co.,*
710 S.W.3d 379 (Tex. App.—Austin [15th Dist.] 2025, no
pet.)...................................................................................................12

*Gustafson v. Chambers,*
871 S.W.2d 938 (Tex. App.—Houston [1st Dist.] 1994, no
writ) .............................................................................................8

*Hou. Livestock Show & Rodeo, Inc. v. Dolcefino Commc'ns,
LLC,*
702 S.W.3d 675 (Tex. App.—Houston [1st Dist.] 2024, no
pet.)...................................................................................... 18, 19, 24

*HTS Serv. Inc. v. Abedin,*
No. 14-23-00356-CV, 2025 WL 899844 (Tex. App.—Houston
[14th Dist.] Mar. 25, 2025, no pet.).............................................. 19, 23

*Hyundai Motor Am. v. O'Neill,*
839 S.W.2d 474 (Tex. App.—Dallas 1992, no writ) .............................5

*In re Anderson,*
163 S.W.3d 136 (Tex. App.—San Antonio 2005, no pet.) .................. 4, 7

*In re Bass,*
113 S.W.3d 735 (Tex. 2003)................................................... 18, 29

*In re Cont'l Gen. Tire, Inc.,*
979 S.W.2d 609 (Tex. 1998).................................................17

*In re Desa Heating, L.L.C.,*
No. 2-06-088-CV, 2006 WL 1713489 (Tex. App.—Fort Worth
June 22, 2006, no pet.) ............................................................ 19, 24

*In re Dream Dallas, LLC,*
  No. 05-23-01085-CV, 2024 WL 1154139, (Tex. App.—Dallas
  Mar. 18, 2024, no pet.) ..................................................................................3

*In re Michelin N. Am., Inc.,*
  No. 05-15-01480-CV, 2016 WL 89097  (Tex. App.—Dallas
  Mar. 9, 2016, no pet.) ....................................................................................6

*In re RSR Corp.,*
  568 S.W.3d 663 (Tex. 2019).......................................................................5, 6

*In re Soto,*
  270 S.W.3d 732 (Tex. App.—Amarillo 2008, no pet.) ........................5, 7

*In re Sw. Bell Tel. Co., L.P.,*
  235 S.W.3d 619 (Tex. 2007).........................................................................3

*In re Valero Ref.-Tex., LP,*
  No. 01-14-00149-CV, 2014 WL 4115917 (Tex. App.—
  Houston [1st Dist.] Aug. 21, 2014)...........................................................25

*Kana Energy Servs., Inc. v. Jiangsu Jinshi Mach. Group Co.,*
  565 S.W.3d 347 (Tex. App.—Houston [14th Dist.] 2018, no
  pet.)..........................................................................................................20, 22

*Rsch Equip. Co., Inc. v. C.H. Galloway & Sci. Cages, Inc.,*
  485 S.W.2d 953 (Tex. App.—Waco 1972, no writ) .........................20, 22

*Salazar v. Coastal Corp.,*
  928 S.W.2d 162 (Tex. App.—Houston [14th Dist.] 1996, no
  writ) ................................................................................................................9

*SCM Corp. v. Triplett Co.,*
  399 S.W.2d 583 (Tex. App.—San Antonio 1966, no writ).. 20, 21, 22, 23

*Texaco, Inc. v. Dominguez,*
  812 S.W.2d 451 (Tex. App.—San Antonio 1991, no writ).....................9

*Trilogy Software, Inc. v. Callidus Software, Inc.,*
  143 S.W.3d 452 (Tex. App.—Austin 2004, pet. denied)......................19

*Univ. of Tex. Sys. v. Franklin Ctr. for Gov't & Pub. Integrity,*
  675 S.W.3d 273 (Tex. 2023).........................................................................8

*Walker v. Packer,*
  827 S.W.2d 833 (Tex. 1992).........................................................................3

*Werley v. Cannon,*
344 S.W.3d 527 (Tex. App.—El Paso, 2011, no pet.) ........................... 30

**Statutes**

Tex. Civ. Prac. & Rem. Code § 51.014(a)(4), (b).................................... 13

Tex. Civ. Prac. & Rem. Code §134A.002(6)............................................ 18

**Rules**

L.R. 4(d)(4) ................................................................................................ 7

Tex. R. App. P. 33.1(a).......................................................................... 2, 13

Tex. R. Civ. P. 193.3(a) ............................................................................ 4

## INTRODUCTION

The Business Court correctly ordered Storable to produce limited but highly relevant data about its facility management software (FMS) customers. The court tailored the production just to "documents sufficient to show the name, city, state, and zip code of all self-storage facilities using Storable's FMS platforms as of December 30, 2024." 16MR290. The data is key proof of FMS market share needed to support SafeLease's claims and rebut Storable's pending summary judgment motion.

None of this data is a trade secret. If it were, Storable would have said so early and often. Instead, it chose to raise other points and claimed trade-secret status only *after* being ordered to produce the data. Manifest tactical delay has consequences. A party's regret over a failed strategy is not court error and no basis for the extraordinary remedy of mandamus.

Moreover, rather than establish clear abuse of discretion, Storable offers cursory, conclusory, or speculative arguments. It hand-waves over whether this limited data really is a trade secret, why its silence did not waive privilege, how view-but-not-keep information ever could suffice, and that the parties' agreed protective order somehow is inadequate. Indeed, some of Storable's arguments—such as the suggestion that

-1-

SafeLease's *outside counsel* might violate the protective order—are newly raised and may be ignored. *See* TEX. R. APP. P. 33.1(a). One cannot show a clear abuse based on arguments it did not present to the trial court.

All of Storable's arguments fail. Even if Storable had not waived its trade-secret claim, FMS customers—i.e., self-storage facilities—are part of a well-defined and readily ascertainable class. Bare-bones data about them (name and city) is hardly a trade secret. Even if it were, the data is directly material to SafeLease's claims for monopoly abuse, and Storable does not dispute its relevance. Beyond that, the proposed alternatives are unworkable and inadequate. Letting SafeLease's experts (but *not* its outside counsel) just see the data (but *not* get a copy to analyze) would hogtie SafeLease from presenting its claims. This is especially harmful since Storable's statements about its market share and customer roster have been moving targets. In any event, the protective order, which Storable helped draft, covers "trade secrets" and will safeguard the data. Unrealistic hypotheticals of possible disclosure or misuse by SafeLease's counsel simply are not enough.

Storable has not shown error, let alone clear abuse of discretion, and mandamus relief is unwarranted. Storable's petition should be denied.

## STANDARD OF REVIEW

"Mandamus relief is an extraordinary remedy that issues only if the court clearly abused its discretion and the relator has no adequate remedy by appeal." *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding). But this relief "will not issue where there is 'a clear and adequate remedy at law, such as a normal appeal.'" *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding) (cleaned up). There is no jurisdiction to grant mandamus where such a remedy at law exists. *Bell Helicopter Textron, Inc. v. Walker*, 787 S.W.2d 954, 955 (Tex. 1990) (orig. proceeding).

"Trial courts have broad discretion to decide whether to permit or deny discovery," and they "abuse that discretion only if their decision is 'so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.'" *In re Dream Dallas, LLC*, No. 05-23-01085-CV, 2024 WL 1154139, at *2 (Tex. App.—Dallas Mar. 18, 2024, no pet.) (cite omitted).

## ARGUMENT

### I. Storable Chose Not to Allege the Data Is a Trade Secret Until Too Late and Failed to Preserve Any Privilege.

The Court need not address the merits of Storable's claim that limited data about its customers is a trade secret because it failed to preserve any alleged privilege. Storable repeatedly chose *not* to raise a privilege claim even though it was required to do so earlier. It did not assert a privilege until *after* being told to produce the list and *after* the court noted that Storable had not asserted trade-secret privilege. That is too late. Storable is barred from raising it now.

If the Court accepts Storable's argument that it knew about and decided to assert the privilege later, the inescapable conclusion is that Storable failed to preserve the privilege. That failure is fatal to its petition.

A failure to raise a privilege is a failure to preserve it. To "preserve a privilege from written discovery," a party must state that "information or material responsive to the request or required disclosure has been withheld" and "the privilege . . . asserted." TEX. R. CIV. P. 193.3(a). If the party does not, the privilege is forfeited. *See In re Anderson*, 163 S.W.3d 136, 141 (Tex. App.—San Antonio 2005, no pet.) (orig. proceeding); *In re*

-4-

*Soto*, 270 S.W.3d 732, 734-35 (Tex. App.—Amarillo 2008, no pet.) (orig. proceeding). "Waiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." *In re RSR Corp.*, 568 S.W.3d 663, 666 (Tex. 2019) (orig. proceeding) (citations omitted). When a party makes "a tactical, yet erroneous, decision" not to make an argument, it is waived. *Id.*

Here, Storable withheld requested documents but never said it was withholding them because of trade-secret, or any other privilege, as required. It made not a peep about trade secrets until after the trial court ordered the data be produced and noted that Storable did not claim the data was a trade secret. 16MR290-293. At three critical junctures, it chose not to raise the privilege. It omitted a privilege claim from its required Objections and Responses to the discovery; from many conferrals and emails among counsel about the requests; and from its formal discovery letter to the Court. *See* 23MR876-912. "Trade secret" was not mentioned until Storable filed an Emergency Motion for Stay over six weeks after its original Objections and Responses.

That was far too late. *See Hyundai Motor Am. v. O'Neill*, 839 S.W.2d 474, 481 (Tex. App.—Dallas 1992, no writ) (orig. proceeding) (failure to

-5-

assert privilege in discovery response and failure to put on evidence supporting privilege resulted in waiver); *In re Michelin N. Am., Inc.*, No. 05-15-01480-CV, 2016 WL 890970, at *8 (Tex. App.—Dallas Mar. 9, 2016, no pet.) (failure to submit evidence supporting privilege claim until after discovery ordered resulted in waiver). Storable's many failures to raise privilege are intentional conduct inconsistent with its claimed right.

Storable's statements below show that it consciously chose not to assert the privilege:

> The Court noted in the May 28, 2025 Discovery Order that Storable did not claim that the customer list was a trade secret. Respectfully, Storable's response to SafeLease's pre-motion letter was subject to strict length limitations under the local rules. The Court ruled on this discovery dispute based solely on those letters, rather than requesting further briefing. Further briefing would have clarified that Storable's customer list is a trade secret.

19MR697 n.1. Storable tried to blame its failure on the trial court's "length limitations." But it took just six words to assert the privilege: "The requested documents are trade secrets." Instead, Storable admits it chose to wait for "further briefing," even though it never asked for any.

This *choice* not to argue privilege is an "intentional relinquishment of a right actually known." *RSR*, 568 S.W.3d at 666. That Storable "would have" claimed privilege in "further briefing" is immaterial. 19MR697 n.1.

Storable argued other points without asking for more briefing or words or a hearing. Its deliberate decision was textbook waiver.

Even if Storable's initial failures to raise privilege were excusable, its failure to assert the privilege in its formal discovery letter could not be. Per local court rules, once discovery letters are filed, the court may "issue an order if the Court, in its discretion, determines no further briefing is necessary." L.R. 4(d)(4). Storable was on notice that if it did not raise privilege in its letter, it may be ordered to produce without any decision on privilege. Yet it did not raise the privilege in its formal discovery letter. Such an omission is forfeiture. *See Anderson*, 163 S.W.3d at 141; *Soto*, 270 S.W.3d at 734-35. Had Storable truly refused production based on an alleged trade-secret privilege, it should have said so no later than its formal discovery letter.

Storable now insists it did assert the privilege, without ever saying *trade-secret privilege*, by saying the data is confidential and sensitive. Pet. at 11. But that's not synonymous with a trade secret. Storable knows this, as it cites the several unique trade-secret elements. *See* Pet. at 6 (quoting TEX. CIV. PRAC. & REM. CODE § 134A.002(6)). Many things, like social security and driver's license numbers, are highly confidential and

sensitive but not trade secrets. No court has held that describing data as confidential suffices to assert a trade-secret privilege. And, moreover, litigants have long been required to "*specifically* plead the *particular* privilege" they intend to claim. *Gustafson v. Chambers*, 871 S.W.2d 938, 946 (Tex. App.—Houston [1st Dist.] 1994, no writ) (emphasis added). Storable did not do so.

The case Storable cites to argue that "magic words" are not required is of no help. Pet. at 11, quoting *Univ. of Tex. Sys. v. Franklin Ctr. for Gov't & Pub. Integrity*, 675 S.W.3d 273, 285 (Tex. 2023). There, the Court held that an agreement between a firm and the state university system's general counsel did not need to "use the phrase 'legal advice,' 'legal assistance,' or the like" for the attorney-client privilege to apply to the relationship because the work clearly included legal compliance. *Id.* at 285-87. The case says nothing about trade-secret or any other privilege, or the standard for invoking that privilege.

Nor is the phrase *trade-secret privilege* a string of needless "magic words." The phrase describes a specific legal privilege that, when timely asserted and properly supported, creates rights and protections for the holder of the privilege. It is not asserted casually or preserved vaguely.

*See Salazar v. Coastal Corp.*, 928 S.W.2d 162, 172 (Tex. App.—Houston [14th Dist.] 1996, no writ) (a party must "specifically plead the particular privilege claimed"); *Texaco, Inc. v. Dominguez*, 812 S.W.2d 451, 454 (Tex. App.—San Antonio 1991, no writ) (same). It's not enough to say "confidential," "sensitive," or "proprietary," even "highly" so. Pet. at 11. If that's all it took to assert trade-secret privilege, litigants could sleep on their rights until someone else (like the Business Court) reminds them that they failed to raise the privilege.

Moreover, just raising a privilege is not enough. Storable had to prove that name/city customer data is a trade secret. Its vague references to the information being confidential or sensitive fall far short of establishing an actual trade secret.

Because Storable did not preserve privilege, the court did not abuse its discretion in ordering Storable to produce this limited data. The Court should deny the petition.

## II.   Storable's Data is Secured by The Agreed Protective Order.

Even if self-storage facility customers' names were a trade secret, the protective order specifically protects them. Storable knows this, as it helped draft the order. Any alleged trade secrets are fully protected by

-9-

the order Storable helped draft. Under that order, no SafeLease employee will be able to view these customer names. Only SafeLease's outside counsel (except Adam Locke) and its outside experts may have access.

The protective order protects Storable's interests by covering data designated as Outside Counsel's Eyes Only Information ("OCEO"). 6MR109 ¶3. This includes "trade secrets," which "may not be disclosed to any party or employee, representative, or affiliate of a party, except by agreement or a subsequent Order by this Court." *Id.* The parties expected disclosure of trade secrets and agreed to safeguards. That's why Storable does not try to challenge those safeguards now, aside from a stray criticism about unidentified "gaps" in the order's protection. Pet. at 15. That's a criticism Storable never raised below.

Instead, Storable offers vague and irrelevant complaints about confidentiality designations not superseding trade-secret protections and makes new and baseless speculation that SafeLease later could say the protective order is void or that it—more accurately, that SafeLease's outside counsel and experts—will circumvent the order deliberately. In reality, Storable's concerns are not that the protective order is

inadequate, but that it will be disregarded. That concern is baseless, and none of Storable's assertions has merit.

**A.    No one claims a protective order prevents deciding what is a trade secret or what should be produced.**

Storable starts with a strawman, pointing out that parties seeking production of a trade secret still must show their need for the information to fairly adjudicate a claim even if a protective order exists. Pet. at 15-16. SafeLease does not argue otherwise. But that requirement applies only if the information is a trade secret, which broadly identifiable customer data is not, and only if the alleged privilege was not waived, which it was here. And SafeLease has shown that production is needed in this case.

**B.    Whether the protective order might become void later is a nonissue.**

Storable warns that SafeLease could say the protective order is void if Storable wins a remand of the case. Pet. at 16-17. This is not serious.

It is Storable who suggests its appeal may void the protective order. 21MR802. SafeLease argued the opposite, that "the pending appeal will *not* void the Protective Order." 28MR1001 (emphasis added). Moreover, even if the order were voided, SafeLease stressed, "the parties' Rule 11 agreement—which they relied on through the injunction hearing here—

-11-

will remain effective and provides *identical* protections." *Id. See also* 28MR1014-1028 (parties "agree to abide by the protections of the PO for documents designated Confidential or Outside Counsel's Eyes Only"); 28MR1030-1031 (Storable noting "the Rule 11 agreement . . . is acting like a protective order"). Storable never mentions its Rule 11 agreement.

Storable is also wrong. Remand is not at issue in the appeal of the temporary injunction. "No statute authorizes an interlocutory appeal of a remand order from the business court," so review of a remand order can be obtained only by a petition for writ of mandamus. *ETC Field Servs., LLC v. Tema Oil & Gas Co.*, 710 S.W.3d 379, 380-81 (Tex. App.—Austin [15th Dist.] 2025, no pet.). Storable did not petition for mandamus of the remand denial, or brief those mandamus standards, or invoke original appellate jurisdiction. There is no true concern that the protective order may be voided by a remand.

Moreover, Storable's argument proves far too much. It undermines the Business Court's power to make any ruling in this case. Invoking the possibility that at some point there *might* be a remand hardly entitles a party to avoid future discovery, much less ignore court orders. Indeed, the statute allowing for interlocutory appeal of a temporary injunction

expressly does *not* grant a stay of ongoing trial court proceedings. Rather, it contemplates that all pretrial proceedings, like discovery, continue during the appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(4), (b).

In short, Storable's argument about a later-voided protective order is the reddest of herrings. It ignores SafeLease's clear statements that the order will remain effective, the parties' identical Rule 11 protections, and the jurisdictional limits of the current appeal. Storable imagines a problem that it knows does not exist.

## C. Storable's suggestions about improper disclosures are both new and baseless.

Storable points to three "facts" that, it says, show why SafeLease may violate the protective order. Pet. at 17-18. Again, Storable did not raise any of these points below, so the Court can ignore them as forfeited. *See* TEX. R. APP. P. 33.1(a). In any event, they are irrelevant or wrong.

First, Storable points to SafeLease's sharing of OCEO documents with Adam Locke, one of its outside attorneys, apparently to suggest that SafeLease violated the protective order through improper disclosure. Pet. at 17. Hardly so. As one of SafeLease's outside counsel, Locke is allowed under the protective order to view such documents. Storable asked the trial court to modify the protective order to exclude Locke from having

-13-

access to OCEO documents. 7MR120-135; 10MR225-227. Its effort failed, and Storable tried again, asking the court to reconsider its denial a few weeks later. 20MR705-793. That effort failed too. The court tried to mollify Storable's concerns by ordering that Locke cannot view the customer data. 32MR1077. Notably, the court said its "precaution in no way reflects on the integrity or professionalism of Mr. Locke, which the Court does not question." *Id.* So, Storable's first "fact" is far off the mark.

Second, Storable says SafeLease circumvented "security measures," so it surely will circumvent the protective order. Pet. at 17-18. This is an unsupported accusation, and it's wrong.

In fact, SafeLease epitomizes data security. It passed a rigorous third-party SOC 2 (System & Organization Controls 2) audit. 18MR397. SOC 2 is a framework for managing and protecting customer data, focusing on security, availability, processing integrity, confidentiality, and privacy. It's the "gold standard" in the industry. Appx005. Storable, despite being the dominant provider of FMS systems in the self-storage market, only passed a lesser SOC 1 audit. Appx006 The claim that SafeLease circumvented "security measures" simply is a repackaging of the parties' dispute over whether its "authorized user" access is

permitted. That dispute is not at issue in this mandamus proceeding. In any event, SafeLease's access to its customers' own data in their FMS systems always has been done with explicit permission, with Storable's knowledge, and tracking Storable's terms of service word for word. Appellee Br. at 8-10, *Storable, Inc. v. SafeLease Ins. Servs., LLC*, No. 15-25-00020-CV (Tex. App.—Austin [15th Dist.] filed June 6, 2025).

As a result, after hearing three full days of evidence, the trial court rejected Storable's claims that SafeLease access creates a security risk or is unauthorized. It held that the "evidence failed to show that SafeLease":

- "misused or improperly disclosed customer data";
- "used spybots, engaged in hacking, or introduced or attempted to introduce malicious code or viruses";
- "interfered with or interrupted the performance or integrity of the FMS system";
- "accessed customer data in a manner not authorized by the customer"; or
- "materially increased the risk of a security breach."

18MR393 ¶5. The court found Storable's evidence for these claims to be "not credible, and SafeLease's controverting evidence was credible." *Id.* Storable's "customers are authorized to designate third-party vendors as authorized users, and that the customers in question have designated

-15-

SafeLease as an authorized user." *Id.* ¶11. Assertions that SafeLease skirted security measures are empty.

And even if SafeLease's authorized user access were to violate the terms of service (and it never has), it does not follow that SafeLease will violate the protective order. The parties dispute whether SafeLease's authorized user access violates the terms of service, but no one disputes that disclosing OCEO documents to unauthorized persons violates the protective order. Storable has no basis to accuse SafeLease of potentially violating the order on purpose.

To be sure, the accusations are directed at SafeLease in name only. In fact, SafeLease employees and one of its counsel (Adam Locke) will have *no access* to the customer data if Storable designates it as OCEO. Only outside counsel and experts of SafeLease will be allowed to access and study the data. In other words, the parade of horribles breathlessly laid out by Storable is an accusation against reputable lawyers and experts for which it has no reason to suspect of bad faith.

Third, Storable claims that the protective order *may* be inadequate because vendors and experts *may* be outside the trial court's contempt power. Pet. at 18. Storable cites no authority that third parties, who will

have to agree to the protective order, might be beyond the court's contempt power, and it cites no facts to suggest that any would violate it. A party cannot rely on speculation of possible wrongdoing to claim that a protective order is inadequate. It must offer "specific, fact-based grounds for believing that trade secrets may be disclosed in violation of its protective order." *In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d 609, 614 (Tex. 1998) (orig. proceeding). Here, Storable offers nothing. This concern, like all of Storable's others, is pretextual.

Storable's concerns are not that the protective order is inadequate, but that it will be disregarded. Such concerns, with rare exceptions, were not argued below and are forfeited. Regardless, they are meritless. Even if customer data were a trade secret, a jointly prepared protective order that specifically covers trade secrets will fully protect all confidentiality interests on both sides. This petition should be denied.

## III. Storable Never Established that this Data is a Trade Secret.

If the Court gets to the merits of the alleged trade-secret privilege, which it need not do, it will find Storable's claim wanting. Storable bears the burden of proving the privilege in the first place, but it musters only a paragraph of conclusory assertions that the data has independent

economic value because of its secrecy. *See* Pet. at 9. It fails to grapple with the arguments and authorities raised below showing that, although detailed customer lists can be a trade secret, this limited data is not one.

Under Texas Rule of Evidence 507, one asserting a trade-secret privilege "has the burden of proving that the discovery information sought qualifies as a trade secret." *In re Bass*, 113 S.W.3d 735, 737 (Tex. 2003) (orig. proceeding). "Trade secret" is defined by the Texas Uniform Trade Secret Act. It includes business information, such as customer lists, *only if* it "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." TEX. CIV. PRAC. & REM. CODE § 134A.002(6). This definition is "instructive to" a Rule 507 analysis. *Hou. Livestock Show & Rodeo, Inc. v. Dolcefino Commc'ns, LLC*, 702 S.W.3d 675, 686 (Tex. App.—Houston [1st Dist.] 2024, no pet.).

To be sure, nonpublic "information that a firm compiles regarding its customers may enjoy trade secret status under Texas law." *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 466 (Tex. App.—Austin 2004, pet. denied). "But this does not mean that trade

secret status automatically attaches to any information that a company acquires regarding its customers[.]" *Id.*

To be a trade secret, a customer list must have "actual or potential independent economic value to third parties because it is generally unknown and not readily ascertainable through proper means." *HTS Serv. Inc. v. Abedin*, No. 14-23-00356-CV, 2025 WL 899844, at *4 (Tex. App.—Houston [14th Dist.] Mar. 25, 2025, no pet.). "Courts generally recognize that customer lists or financial information that can be used to obtain customers or to negotiate pricing or fees to obtain an advantage in the market qualifies as a trade secret." *Hou. Livestock*, 702 S.W.3d at 690. A customer list is entitled to *no* protection when the resisting party fails to show "the value of the information to [itself] and its competitors or how the information presents an opportunity to obtain an advantage over competitors." *In re Desa Heating, L.L.C.*, No. 2-06-088-CV, 2006 WL 1713489, at *2-3 (Tex. App.—Fort Worth June 22, 2006, no pet.) (orig. proceeding) (cleaned up).

Customer data is no advantage to competitors when the customers belong to a "well-defined," "readily ascertained class." *Rsch Equip. Co., Inc. v. C.H. Galloway & Sci. Cages, Inc.*, 485 S.W.2d 953, 956 (Tex. App.—

Waco 1972, no writ); *SCM Corp. v. Triplett Co.*, 399 S.W.2d 583, 587 (Tex. App.—San Antonio 1966, no writ). Trade secret status "does not automatically attach to a client list"; it must be data "that is not publicly available or readily ascertainable by independent investigation." *Allan J. Richardson & Assocs., Inc. v. Andrews*, 718 S.W.2d 833, 837 (Tex. App.—Houston [14th Dist.] 1986, no writ). So, when a party "failed to show that its customers could not readily be identified by someone outside its employ," or "that such knowledge carried some competitive advantage," there was no trade-secret privilege. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 684 (Tex. 1990). *See also Kana Energy Servs., Inc. v. Jiangsu Jinshi Mach. Grp Co.*, 565 S.W.3d 347, 355-56 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (no trade secret in customer identities ascertainable by online searches and phone calls).

Thus, customers of a window cleaning business are not a trade secret. "Everyone having show windows must clean them and will probably engage a professional window cleaner if the latter will do the work well enough and cheap enough." *SCM*, 399 S.W.2d at 587. And auto insurance customers are readily ascertainable because they own a car. *Id.* Such customer lists "are not a trade secret" because "everyone knows

[the customers] buy from someone." *Id.* But an exterminator's customer list could be a trade secret because "most property owners" don't require extermination services, "and the ones who do need such service, do not advertise the fact," so a "list of such prospects can be compiled only at considerable expense." *Id.*

Beyond Storable's just saying so, it never proved that this limited customer data has economic value to third parties because of its secrecy or otherwise. The documents will show only the minimum: names, cities, states, and zip codes of self-storage facilities that use a Storable FMS as of December 30, 2024. The ordered production is not "all documents" or everything "related to" facility customers. It will *not* reflect customer contacts, how long they've been customers, contract or pricing terms, whether they buy insurance or from whom, or contact data like emails, phone numbers, or physical or mailing addresses. 16MR290.

The Business Court's order is remarkably narrow: facility names/locations. Such high-level data is less than what's available about these facilities in a telephone directory or online. Knowing merely the name and location of a self-storage facility would not help an FMS competitor (much less an insurance provider like SafeLease) gain an

advantage over Storable. And Storable cannot show otherwise because, like auto-insurance or window-cleaning customers, FMS customers are in a "well-defined" and "readily ascertained" class. *Rsch Equip.*, 485 S.W.2d at 956; *SCM*, 399 S.W.2d at 587; *Allan*, 718 S.W.2d at 837.

Storable provides FMS systems *only* to self-storage facilities, and almost all self-storage facilities use an FMS product. So, to find potential FMS customers, one need only identify self-storage facilities. That's not hard. Self-storage facilities are, by their nature, public-facing businesses that fail if they are hard to find. They can be identified by simple internet searches. Storable has an affiliate that locates self-storage facilities for the public for free. *See* https://www.sparefoot.com/. Because the class of FMS customers is well-defined and readily can be ascertained by online searches and the Yellow Pages, this limited customer data is not a trade secret. *See SCM*, 399 S.W.2d at 586 (no trade secret if customers "could readily be obtained from a Chamber of Commerce list and telephone directory"); *Kana*, 565 S.W.3d at 355-56.

Conclusory arguments are not enough. Storable fails to explain how this limited data gives "potential customer leads" to competitors, or its disclosure would create an "increased risk that competitors will poach"

these customers, since they are part of an easily ascertainable class. Pet. at 9. Or what "other competitive intelligence" this data would reveal. *Id.* Or how a competitor is advantaged by knowing "Storable's presence in different geographic areas," *id.*—information that it offered to disclose and, hence, does not consider a trade secret. *See* 15MR285; 21MR795. And its claim that it "put in the hard work of identifying those clients and convincing them of the benefits of FMS and insurance," Pet. at 9, is a non sequitur. This is a list of FMS customers, not insurance customers. It will not reveal Storable insurance customers, which would be of no value to its FMS competitors anyway.

Storable compounds this illogic by arguing not that the data derives value from its secrecy, but that it could be damaged when SafeLease misuses the data. Pet. at 10 (arguing that SafeLease will divert customers to other FMS providers or to target Storable's *insurance* customers). But those concerns have nothing to do with whether FMS customer data has "actual or potential independent economic value to third parties because it is generally unknown and not readily ascertainable through proper means," *Abedin*, 2025 WL 899844, at *4, or whether it "can be used to obtain customers or to negotiate pricing or fees

to obtain an advantage in the market," *Hou. Livestock*, 702 S.W.3d at 690. These concerns are about whether adequate safeguards exist for produced documents, which the protective order here offers.

Moreover, the concerns are premised on an assumption that outside SafeLease counsel will violate the protective order by disclosing the data to SafeLease employees. That assumption is baseless, as explained above. Regardless, Storable fails to explain how FMS customer name/locations data would enable SafeLease to target Storable's *insurance* customers, given that it would not reveal who those insurance customers are.

Alleging a trade secret does not establish one. *See, e.g., Desa*, 2006 WL 1713489, at *3 (affidavit didn't establish trade secrets; it didn't state why customers' "identity and contact information is important," why it gives "a competitive advantage," or why revealing it "would hurt its business or its relationships"). Because Storable now alleges its customer data is a trade secret, but does not show it to be so, Storable failed to carry its burden. Its petition should be denied.

## IV. Customer Data has Core Relevance to this Case and is Needed.

Since Storable failed to timely assert or establish that this customer data is a trade secret, the Court need not decide whether "the information

is necessary to the proof of one or more material elements of the claim and that it is reasonable to conclude that the information sought is essential to a fair resolution of the lawsuit." *In re Valero Ref.-Tex., LP*, No. 01-14-00149-CV, 2014 WL 4115917, at \*3-4 (Tex. App.—Houston [1st Dist.] Aug. 21, 2014) (orig. proceeding) (citation omitted). But it undoubtedly is.

Here, customer data is essential to SafeLease's antitrust claims. It alleges that Storable is leveraging its power in the FMS market to freeze out a competitor in, and monopolize, the tenant-insurance market. *See* 2MR68 ¶93, 70 ¶100, 72 ¶109. The customer data is necessary for proving both Storable's FMS market share (and its market dominance) and the relevant antitrust market.

Storable admits these are SafeLease's claims. But it argues that Storable's summary judgment motion might moot the need for this data and that SafeLease hasn't explained why alternatives are insufficient. Pet. at 13-14. These arguments are without merit.

First, whether a claim may be dismissed in the future is irrelevant. It has no bearing on whether information is needed to prove a live claim.

Second, Storable is using its summary judgment motion as a sword and shield. It says SafeLease should not get key discovery on its antitrust claims because of the pending motion while arguing in that motion that SafeLease has "no evidence" and "zero evidence" to support its claims. 17MR300, 310, 312, 320-321. Its motion says that no "further discovery" is needed because "the undisputed facts" "doom SafeLease's attempted monopolization claim." 17MR298. But it argues the claim is doomed, in part, because Storable has no dangerous probability of monopolizing the insurance market. 17MR308-11. Its FMS dominance, which it is using to try to monopolize the insurance market, is material to its likelihood of success and is much disputed. A request for summary judgment while blocking needed discovery of disputed issues is simply gamesmanship.

Third, Storable's alternatives—relying on Storable's own verification of the data, having Storable's expert to view the data while it remains in Storable's possession, but not keep it to reference later, or letting a third party chosen by Storable view the data and relay its findings to SafeLease—are insufficient. Storable's representations have been unreliable and evolving. Before this case began, its website said it served 36,000 facilities. 28MR1033-1036. After SafeLease filed an

antitrust suit alleging that Storable monopolizes the market, Storable's CEO said in a deposition that it serves only 33,000 facilities. 28MR1038-1039. A month later, it changed the number on its website and claimed at the injunction hearing that it serves only 30,000 facilities. 28MR1041-1042. SafeLease should not have to rely on a number that keeps shifting to, conveniently, lower Storable's market share.

Storable's customer names/locations are needed as reliable evidence supporting SafeLease's antitrust claim. Storable's confusion about what "verification" would entail, Pet. at 13-14, is a distraction that does not change the data's relevance. Even if SafeLease used the "outrageous" verification process Storable theorizes, that is no burden on Storable. *Id.* And it never explains how it is sufficient or feasible for SafeLease experts to see the data but never get a copy. *See id.* at 14. It wouldn't be.

Storable's alternative is restrictive and impractical. It severely would limit SafeLease's ability to fairly pursue its claims. It would force its experts to view ~30,000 customer entries, do a market analysis in one sitting, and then recall the customer data for months. That's unworkable. It's like letting a medical expert see an X-ray but not allowing her to keep

a copy to refer to and analyze later. And, to repeat, it would prevent SafeLease's outside counsel from seeing or analyzing the data. This would make it impossible to cross-examine witnesses with the data or use it to support or respond to motions related to it. This would neuter the value of core data in the case. Storable cites no precedent for such treatment of customer data anywhere.

Storable likewise fails to explain how allowing a third party to view the data and then relay information to SafeLease would be sufficient or feasible. This would hamstring SafeLease even more. It would prevent its counsel and experts from even seeing the data, much less analyzing it, and would force them to trust the say-so of a third party of Storable's choosing. And Storable does not try to explain how sharing its alleged trade secrets with this third party is acceptable but sharing it under a protective order to SafeLease's outside counsel and experts is not. All the speculative horribles that Storable imagines if this information is shared with opposing counsel and experts exist equally if it is shared with a third party. There is no precedent for such extreme restriction of relevant data.

SafeLease needs this information to prove its antitrust claims, and the data is safeguarded by the protective order.

## V. Storable has an Adequate Remedy by Appeal.

Because this data is not a trade secret and production is necessary, Storable has an adequate remedy by appeal. *See Bass*, 113 S.W.3d at 745 (no adequate remedy by appeal *if* information is a trade secret and there was no showing of necessity). And even if the data were a trade secret, it is safe under the protective order to which Storable agreed. No one at SafeLease will access the data. The only people able to see it will be those authorized under the protective order. Nothing will be irretrievably lost, and there is no bell that cannot be unrung. Indeed, Storable's willingness to allow SafeLease experts to view the data under the same protective order that applies to outside attorneys, and to allow a third party to view it, shows that Storable understands two important facts it tries to deny. First, that the protective order safeguards the data, and second, that disclosing the data will not irrevocably lose or compromise the information. Furthermore, any violation of the protective order will be subject to sanctions proportionate to the violation. *See, e.g.*, *Werley v. Cannon*, 344 S.W.3d 527, 531-32 (Tex. App.—El Paso, 2011, no pet.). There is no serious risk that Storable will be without a remedy here.

This customer data is not a trade secret, its production is necessary, and it will remain protected by the parties' protective order. Storable has an adequate remedy by appeal, and mandamus is not appropriate.

## PRAYER

The Court should deny the petition.

July 11, 2025                    Respectfully submitted.


                                /s/ *Judd E. Stone II*
                                JUDD E. STONE II
                                  State Bar No. 24076720
                                CHRISTOPHER D. HILTON
                                MICHAL R. ABRAMS
                                CODY C. COLL
                                ALEXANDER M. DVORSCAK
                                STONE HILTON PLLC
                                600 Congress Ave., Suite 2350
                                Austin, Texas 78701
                                judd@stonehilton.com
                                chris@stonehilton.com
                                michael@stonehilton.com
                                cody@stonehilton.com
                                alex@stonehilton.com
                                (737) 465-7248

                *Counsel for Real Party in Interest*
                *SafeLease Insurance Services, LLC*

### CERTIFICATE OF SERVICE

On July 11, 2025, this document was served on counsel for all parties, via the Court's electronic filing system.

                                /s/ *Cody C. Coll*
                                Cody C. Coll

### CERTIFICATE OF COMPLIANCE

Microsoft Word reports that this document contains 7,056 words, excluding exempted text.

                                /s/ *Cody C. Coll*
                                Cody C. Coll

# In the Court of Appeals for the Fifteenth Judicial District Austin, Texas

IN RE STORABLE, INC.; REDNOVA LABS, INC. (D/B/A STOREDGE); SITELINK SOFTWARE, LLC; EASY STORAGE SOLUTIONS, LLC; BADER CO.; AND PROPERTY FIRST GROUP, LP,

*Relators.*

*On Petition for a Writ of Mandamus to the Third Division of the Texas Business Court*

## APPENDIX

JUDD E. STONE II
 State Bar No. 24076720
CHRISTOPHER D. HILTON
MICHAL R. ABRAMS
CODY C. COLL
ALEXANDER M. DVORSCAK
STONE HILTON PLLC
600 Congress Ave., Suite 2350
Austin, Texas 78701
judd@stonehilton.com
(737) 465-7248

*Counsel for Real Party in Interest SafeLease Insurance Services LLC*

**INDEX**

Tab 1:      Excerpts of Temporary Injunction Transcript
      February 14, 2025........................................................Appx 002-006

# TAB 1

**REPORTER'S RECORD**

**VOLUME 5 OF 7 VOLUMES**

**TRIAL COURT CAUSE NO. 25-BC03A-0001**

**APPELLATE CASE NO. 15-25-00020-CV**

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
3/17/2025 3:37:13 PM
CHRISTOPHER A. PRINE
Clerk

———————————————————————————————————

SAFELEASE INSURANCE SERVICES, LLC   :   TEXAS BUSINESS COURT

           Plaintiff,      :

v.                          :

                          :   DIVISION 3A

STORABLE, INC., REDNOVA LABS, INC.,  :
(d/b/a STOREDGE), SITELINK SOFTWARE, :
LLC, EASY STORAGE SOLUTIONS, LLC,   :
BADER CO., AND PROPERTY FIRST GROUP, :
LP                         :   TRAVIS COUNTY, TEXAS

           Defendants.     :

———————————————————————————————————

**HEARING ON PLAINTIFF'S EMERGENCY APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION
AND ALTERNATIVE MOTION FOR RECONSIDERATION**

———————————————————————————————————

On the 14th day of February, 2025, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Melissa Andrews, Judge Presiding, held in person in Austin, Travis County, Texas.

Proceedings reported by stenographic machine shorthand.

Donna A. Goree, CSR, RPR, CRR  (979) 533-0422

**A P P E A R A N C E S**

APPEARING FOR THE PLAINTIFF:

**YETTER COLEMAN, LLP**
811 Main Street, Suite 4100
Houston, Texas   77002-6125
(713) 632-8000

**HON. R. PAUL YETTER**
State Bar No. 22154200
pyetter@yettercoleman.com

**HON. SUSANNA R. ALLEN**
State Bar No. 24126616
sallen@yettercoleman.com

**STONE HILTON, LLP**
811 Main Street, Suite 4100
Houston, Texas   77002-6125
(713) 632-8000

**HON. CHRISTOPHER HILTON**
State Bar No. 24087727
chris@stonehilton.com

APPEARING FOR THE DEFENDANTS:

**PORTER HEDGES, LLP**
1000 Main Street, Floor 36
Houston, Texas   77002-6341
(713) 226-6650

**HON. RAY T. TORGERSON**
State Bar No. 24003067
rtorgerson@porterhedges.com

**HON. NEIL KENTON ALEXANDER**
State Bar No. 00996600
kalexander@porterhedges.com

**HON. LIZA EOFF**
State Bar No. 24095062
leoff@porterhedges.com

**A P P E A R A N C E S**

**GREENBERG TRAURIG, LLP**
 300 West 6th Street, Suite 2050
 Austin, Texas   78701
 (512) 320-7226

   **HON. DALE WAINWRIGHT**
   State Bar No. 00000049
   wainwrightd@gtlaw.com
   dale.wainwright@gtlaw.com

   **HON. JUSTIN LEWIS BERNSTEIN**
   State Bar No. 24105462
   (617) 512-5191
   bernsteinju@gtlaw.com

**Q.** **(BY MS. ALLEN)** Does SafeLease have any security measures in place for the customer data that it reviews?

**A.** We do. We have a very strong SOC-2. Independent audit was done on all of our internal systems and processes, not just on our financial data; but this is our internal data storage and engineering processes.

**Q.** Is this the gold standard for privacy and confidentiality?

**A.** It is.

**MS. ALLEN:** We can take that down. Thank you.

**Q.** **(BY MS. ALLEN)** How does SafeLease become an authorized user on the ESS platform?

**A.** So, the customer would create a set of credentials; and within their user-access controls, they will then have to call Storable in order to unlock the insurance module. Storable will choose to unlock that on the back end or not. And once that is unlocked, then SafeLease is able to access the insurance module.

**THE COURT:** May I interrupt you? Would you let me know the exhibit number? I know you said it; but I need the exhibit number of the one we just looked at.

**MS. ALLEN:** Yes, it was 48.

**THE COURT:** Plaintiff's Exhibit 48?

**MS. ALLEN:** Plaintiff's 48.

**THE COURT:** Thank you.

Donna A. Goree, CSR, RPR, CRR  (979) 533-0422

A.   I told my team to continue on with the removing unauthorized access to our platforms' plan that had been interrupted by the TRO.

Q.   Now, you have -- on many occasions you have mentioned security concerns; right?

A.   Yes.

Q.   You do understand that SafeLease has gotten certifications at one of the highest secure levels for how it handles its customers' information, SOC-2; right?

A.   Sure.

Q.   And Storable doesn't have SOC-2 certification for handling secure, confidential, and private information; does it?

A.   Storable has SOC-2.

Q.   Storable has only SOC-1, according to what your storEDGE site said.

A.   I apologize if I don't remember the exact classification.

Q.   Now, are you aware of any data issues, security issue, data breach of any SafeLease customer in the four years that you have known the company?

A.   I am not, but I would refer back to the --

Q.   Can you just -- let's just keep it at that.  And I would like to ask you the same question about Storable.  Has Storable had a data breach or security lapse of its customers'

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Rosalinda Luna on behalf of Judd Stone
Bar No. 24076720
rosie@stonehilton.com
Envelope ID: 103058144
Filing Code Description: Original Proceeding Response
Filing Description: Real Party in Interest's Response to Petition for Writ of Mandamus
Status as of 7/14/2025 7:04 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Delonda Dean | | ddean@yettercoleman.com | 7/11/2025 9:38:17 PM | SENT |
| Yetter Coleman | | efile@yettercoleman.com | 7/11/2025 9:38:17 PM | SENT |
| Adam Locke | 24083184 | adam@lockelaw.com | 7/11/2025 9:38:17 PM | SENT |
| Courtney Smith | | csmith@yettercoleman.com | 7/11/2025 9:38:17 PM | SENT |
| Rosalinda Luna | | rosie@stonehilton.com | 7/11/2025 9:38:17 PM | SENT |
| Judd Stone | | Judd@stonehilton.com | 7/11/2025 9:38:17 PM | SENT |
| Christopher Hilton | | chris@stonehilton.com | 7/11/2025 9:38:17 PM | SENT |
| R. Paul Yetter | | pyetter@yettercoleman.com | 7/11/2025 9:38:17 PM | SENT |
| Susanna Allen | | sallen@yettercoleman.com | 7/11/2025 9:38:17 PM | SENT |
| Luke A.Schamel | | lschamel@yettercoleman.com | 7/11/2025 9:38:17 PM | SENT |
| Shannon Smith | | ssmith@yettercoleman.com | 7/11/2025 9:38:17 PM | SENT |
| Julia Risley | 24132932 | jrisley@yettercoleman.com | 7/11/2025 9:38:17 PM | SENT |
| Alyssa Smith | | asmith@yettercoleman.com | 7/11/2025 9:38:17 PM | SENT |
| Cody Coll | | cody@stonehilton.com | 7/11/2025 9:38:17 PM | SENT |
| Justin Bernstein | | bernsteinju@gtlaw.com | 7/11/2025 9:38:17 PM | SENT |
| Dale Wainwright | | dale.wainwright@gtlaw.com | 7/11/2025 9:38:17 PM | SENT |

Associated Case Party: Safelease Insurance Services, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Susanna Allen | 24126616 | sallen@yettercoleman.com | 7/11/2025 9:38:17 PM | SENT |